# In the United States Court of Appeals
## For the Eighth Circuit

STATE OF MISSOURI, *ex rel.* CATHERINE HANAWAY, ATTORNEY GENERAL OF MISSOURI,

*Plaintiff-Appellant,*

v.

STARBUCKS CORPORATION,

*Defendant-Appellee.*

Appeal from the U.S. District Court for the Eastern District of Missouri
(4:25-cv-00165-JAR)

**APPELLANT'S REPLY BRIEF**

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL
Louis J. Capozzi, III, #77756MO
  *Solicitor General*
J. Patrick Sullivan, #42968MO
  *Deputy Solicitor General*
J. Michael Patton, #76490MO
  *Deputy Solicitor General*
815 Olive Street, Ste. #200
St. Louis, Missouri 63101
Tel. (573) 645-9662
Louis.Capozzi@ago.mo.gov

*Counsel for the State of Missouri*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................. 3

    I. Starbucks repeats the District Court's errors by discounting the allegations in Missouri's Complaint and relying on outside evidence *fifty-four* times. .............................................................. 3

    II. Like the District Court, Starbucks provides little explanation for the dismissal of Missouri's damages claims. ........................... 8

    III. Starbucks fails to justify a circuit split on standing. ................. 12

    IV. Starbucks fails to explain why Missouri lacks authority to enforce Title VII, § 1981, and the MHRA. ................................... 16

        A. Title VII .............................................................................. 16

        B. Section 1981 ....................................................................... 22

        C. MHRA .................................................................................. 24

    V. Starbucks cannot justify the District Court's dismissal for failure to state a claim by ignoring controlling authority. .......... 27

        A. Counts 1, 2, and 10 ........................................................... 27

        B. Counts 6 and 7 ................................................................... 29

        C. Count 3 ............................................................................... 31

        D. Counts 4 and 5 ................................................................... 33

CONCLUSION .......................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*8000 Maryland, LLC v. Huntleigh Financial Services,*
  292 S.W.3d 439 (Mo. Ct. App. 2009)......................................................32

*Ace Prop. & Cas. Ins. v. Fed. Crop Ins.,*
  440 F.3d 992 (8th Cir. 2006)..............................................................21

*Adarand Constructors v. Pena,*
  515 U.S. 200 (1995).........................................................................16

*Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez,*
  458 U.S. 592 (1982).....................................................................2, 14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).......................................................................4, 7

*Aziz v. Trump,*
  231 F.Supp.3d 23 (E.D. Va. 2017) .......................................................12

*Baker v. Stuart Broad. Co.,*
  560 F.2d 389 (8th Cir. 1977)..............................................................17

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)....................................................................4, 6, 7

*BJC Health Sys. v. Columbia Cas. Co.,*
  348 F.3d 685 (8th Cir. 2003)................................................................1

*Bob Jones Univ. v. United States,*
  461 U.S. 574 (1983).........................................................................18

*C.R. Dep't v. Grimmway Enters., Inc.,*
  800 F.Supp.3d 1084 (E.D. Cal. 2025) ...................................................17

*Clayton v. White Hall School District,*
  875 F.2d 676 (8th Cir. 1989)...............................................................18

*CMR D.N. Corp. v. City of Philadelphia,*
 703 F.3d 612 (3d Cir. 2013) ..............................................................11

*Cole v. Group Health Plan,*
 105 F.4th 1110 (8th Cir. 2024) ........................................................27

*Conn. Nat'l Bank v. Germain,*
 503 U.S. 249 (1992) ..........................................................................22

*Connecticut v. Physicians Health Servs. of Conn., Inc.,*
 287 F.3d 110 (2d Cir. 2002) .............................................................24

*Domino's Pizza, Inc. v. McDonald,*
 546 U.S. 470 (2006)..........................................................................22

*E.E.O.C. v. FedEx,*
 268 F.Supp.2d 192 (E.D.N.Y. 2003) ...............................................17

*Ex parte McNiel,*
 80 U.S. 236 (1871).............................................................................25

*Ezell v. City of Chicago,*
 651 F.3d 684 (7th Cir. 2011).............................................................11

*Fiecke-Stifter v. MidCountry Bank,*
 170 F.4th 1120 (8th Cir. 2026) ........................................................13

*Glore v. Potosi R-III School District,*
 722 F. Supp. 3d 950 (E.D. Mo. 2024)...............................................32

*Grand River Enters. Six Nations v. Beebe,*
 574 F.3d 929 (8th Cir. 2009)...............................................................4

*Hamilton v. Dallas Cnty.,*
 79 F.4th 494 (5th Cir. 2023) (en banc) ............................................28

*Hawaii v. Standard Oil Co.,*
 405 U.S. 251 (1972)...........................................................................23

*Humphries v. Pulaski Cnty. Special Sch. Dist.,*
   580 F.3d 688 (8th Cir. 2009) ......................................................28

*In re New York City Policing During Summer 2020 Demonstrations,*
   548 F.Supp.3d 383 (S.D.N.Y. 2021) ...........................................24

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls,*
   499 U.S. 187 (1991) ...................................................................11

*Lexmark Int'l v. Static Control Components,*
   572 U.S. 118 (2014) ...................................................................19

*Massachusetts v. Bull HN Info. Sys.,*
   16 F.Supp.2d 90 (D. Mass. 1998) ..........................................14, 24

*Matthews v. Harley-Davidson,*
   685 S.W.3d 360 (Mo. banc 2024) ...............................................31

*Mignott v. State Bar of Ga. Found., Inc.,*
   146 F.4th 1095 (11th Cir. 2025) ................................................25

*Miller v. Redwood Toxicology Lab'y,*
   688 F.3d 928 (8th Cir. 2012) ......................................................15

*Muldrow v. St. Louis,*
   601 U.S. 346 (2024) ...................................................................27

*Nashville Gas Co. v. Satty,*
   434 U.S. 136 (1977) ...................................................................11

*New York ex rel. James v. Niagara-Wheatfield Cent. Sch. Dist.,*
   119 F.4th 270 (2d Cir. 2024) ......................................................14

*New York ex rel. Schneiderman v. Utica City Sch. Dist.,*
   177 F.Supp.3d 739 (N.D.N.Y. 2016) ..........................................24

*New York v. Griepp,*
991 F.3d 81 (2d Cir. 2021) ....................................................23

*North Dakota v. Heydinger,*
2016 WL 5661926 (D. Minn. Sept. 29, 2016) ......................................24

*Parham v. Sw. Bell Tel. Co.,*
433 F.2d 421 (8th Cir. 1970)....................................................17

*Pennsylvania v. Glickman,*
370 F.Supp. 724 (W.D. Pa. 1974)................................................23

*Pennsylvania v. Porter,*
659 F.2d 306 (3d Cir. 1981) (en banc) ..............................................24

*Pollard v. E.I. du Pont de Nemours & Co.,*
532 U.S. 843 (2001)..............................................................9

*Radford v. Potosi R-III School District,*
2024 WL 1178000 (E.D. Mo. Mar. 19, 2024) ......................................32

*RadLAX Gateway Hotel v. Amalgamated Bank,*
566 U.S. 639 (2012)..............................................................20

*Sedlacek v. Hach,*
752 F.2d 333 (8th Cir. 1985)....................................................18

*Thompson v. N. Am. Stainless,*
562 U.S. 170 (2011)..............................................................19

*Ulrich v. Pope Cnty.,*
715 F.3d 1054 (8th Cir. 2013)....................................................6

*United States ex rel. Kinney v. Stoltz,*
327 F.3d 671 (8th Cir. 2003)..............................................4, 5, 8

*Uzuegbunam v. Preczewski,*
592 U.S. 279 (2021)..............................................................9, 33

**Statutes**

28 U.S.C. § 1367 ................................................................. 19, 25

42 U.S.C. § 1981 ..................................................................... *passim*

42 U.S.C. § 1981a ......................................................................2, 9

42 U.S.C. § 1983 .........................................................................24

42 U.S.C. § 2000e ................................................................ 3, 16, 19, 22

42 U.S.C. § 2000e-2 ........................................................... 29, 31, 33

42 U.S.C. § 2000e-5 ................................................................. *passim*

Mo. Rev. Stat. § 213.055............................................................ 29, 31, 33

Mo. Rev. Stat. § 213.070...................................................................31

Mo. Rev. Stat. § 213.126................................................................ 24, 26

Mo. Rev. Stat. § 27.060.....................................................................25

**Other Authorities**

Hon. Andrea Lucas, *With Supreme Court affirmative action ruling, it's time for companies to take a hard look at their corporate diversity programs*, REUTERS (June 29, 2023)....................................................28

Margaret H. Lemos, *State Enforcement of Federal Law*, 86 N.Y.U. L. Rev. 698 (2011)........................................................................ 15, 17

*What to Do If You Experience Discrimination Related to DEI at Work*, EEOC .........................................................................................28

## INTRODUCTION

Starbucks repeats the District Court's errors. It ignores Missouri's Complaint and analyzes this appeal based on *Starbucks*'s version of the facts. Starbucks's brief relies on evidence from outside Missouri's Complaint *fifty-four* times. Starbucks Br. 2, 4–12 & nn.1–4. But this only proves Missouri's point: This case should have proceeded to discovery. *See BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003) (reversing dismissal because documents attached to motion to dismiss were outside the complaint).

Starbucks also skates over Missouri's damages claim, even while *admitting* it had plainly discriminatory policies in the recent past. Starbucks Br. 8–11 & n.3. Missouri challenged these policies *retrospectively* and sought damages in addition to injunctive relief. App.64–65, R.Doc.1 at 57–58. Without any explanation, the District Court dismissed Missouri's claims—including its damages claims— noting Starbucks's supposed *prospective* change in policy. *See* App.1639– 40, 1680, R.Doc.40 at 3–4, 44 & n.7. Starbucks's only defense of this critical error is a single footnote that confusingly attempts to import the facial/as-applied distinction applicable to constitutional challenges—

1

even though Missouri never invoked this standard. Starbucks Br. 47 n.19. This point cannot distract from Title VII's text, which allows litigants to challenge facially discriminatory policies and obtain damages for past unlawful conduct. 42 U.S.C. § 1981a(a)(1). That is what Missouri's Complaint does. Thus, even if the Court rejects Missouri's factual allegations and *believes* Starbucks' insistence that it stopped discriminating, dismissal was improper.

On standing, Starbucks fails to cite a single case adopting the District Court's cramped reading of *Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982). Meanwhile, the Second Circuit and many district courts have adopted the exact opposite reading of *Snapp*. *See* Opening Br. 5 n.1. Also, twenty States—including almost every State in this Circuit—agree that, under *Snapp*, "States possess not only the authority, but the duty, to ensure their citizens are protected from harms such as illegal discrimination." States Amicus Br. at 1–2. Starbucks never explains why this Circuit should become an outlier on the ability of States to combat racial discrimination.

Starbucks also repeatedly ignores text and precedent authorizing Missouri to enforce Title VII, § 1981, and the Missouri Human Rights Act

2

("MHRA").  For example, Title VII expressly allows "governments" to sue.

42 U.S.C. §§ 2000e(a), 2000e-5(f)(1).  Missouri is a "government[]," so it

can sue to enforce Title VII.  It is that simple.

This Court should reverse and remand for further proceedings.

## ARGUMENT

**I.     Starbucks repeats the District Court's errors by discounting the allegations in Missouri's Complaint and relying on outside evidence *fifty-four* times.**

Starbucks openly contests the accuracy of the Complaint's

allegations and relies heavily on outside exhibits.  *See* Starbucks Br. 2,

4–12 & nn.1–4.  Starbucks's statement of the case cites outside exhibits

*fifty-four* times while citing Missouri's Complaint only ten times.  *See id.*

This is possible only because the District Court *sua sponte* ordered

Missouri to submit nearly 1,500 pages of exhibits at the motion-to-

dismiss  stage.    *See*  App.162,  R.Doc.38;  App.164–1636,  R.Doc.39–

R.Doc.39-49.  Starbucks also asks this Court to consider material outside

the record.  *E.g.*, Starbucks Br. 5 n.2.  Starbucks then openly contests the

Complaint's factual allegations, claiming that:

> Starbucks does not link executive compensation to any measure of
> minority representation in its retail stores, and it has never
> doubled, halved, or conditioned executive bonuses on any diversity
> metric.  Starbucks does not segregate employees by race or require

3

> racial representatives to speak on behalf of anyone. Rather, Starbucks' employee programs are open to all, and Starbucks has always prohibited all forms of discrimination.

*Compare* Starbucks Br. 3–4, *with* App. 25–47, R.Doc.1 ¶¶ 101–228.

As the Defendant, Starbucks has a right to contest Missouri's factual allegations. But the procedural mechanism for doing so is an answer, not a motion to dismiss. In analyzing a motion to dismiss, the Court must assume the truth of "all factual allegations in the complaint," *Grand River Enters. Six Nations v. Beebe*, 574 F.3d 929, 935 (8th Cir. 2009), and the Court must construe the Complaint's allegations in the light most favorable to the plaintiff, *United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003).

*Twombly* and *Iqbal*—"the universally recognized leading cases," Starbucks Br. 42—impose exactly the same standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). *Twombly* holds that courts must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555. *Twombly* also emphasizes that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and

unlikely." *Id.* at 556 (internal quotation omitted). *Iqbal* likewise reaffirms that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity." 556 U.S. at 679. Thus, even Starbucks's "leading cases" forbid Starbucks's maneuvers. Starbucks Br. 42.

Starbucks nonetheless insists that "the district court properly relied on the documents [from outside the Complaint] to determine what the policies said," "[j]ust as the Attorney General relied on the cited documents to describe the policies challenged." Starbucks Br. 44–45. But this misses the point: At the motion-to-dismiss stage, court construe the facts in the light most favorable to the plaintiff, not the defendant. *Stoltz*, 327 F.3d at 674.

Also, a central component of Missouri's Complaint is that Starbucks has merely rebranded discriminatory programs, it has not genuinely reformed. The Complaint alleges that Starbucks has "tried to hide better" what it is doing through so-called reforms, App.37, R.Doc.1 ¶ 172, and many of Starbucks's policies are mere "pretext[s]" for discrimination, *id.* ¶ 111, 226. Even now, Starbucks insists in its brief that "Starbucks' commitment to fair hiring practices and equal-employment opportunities is consistently reiterated throughout the documents underlying the

5

Complaint." Starbucks Br. 4. But that is exactly the point of the Complaint: Starbucks says that it "is a great place to work, where everyone is treated equally," "[b]ut these statements are false, misleading, and deceptive." App.11, R.Doc.1 ¶¶ 15–17. The District Court erred by focusing on Starbucks's assurances of equal treatment in the submitted exhibits instead of competing evidence—in those same documents—showing that Starbucks maintains blatantly discriminatory policies and practices. *See* Opening Br. 20–22. The District Court should have credited Missouri's factual allegations "even if" it believed "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

Starbucks tries a couple of responses, but both fail. First, Starbucks criticizes Missouri's citation to *Ulrich v. Pope County*, which held that "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 715 F.3d 1054, 1058 (8th Cir. 2013) (quotation omitted). Starbucks believes this standard conflicts with *Twombly* and *Iqbal*, Starbucks Br. 42–43, but their contention is a red herring. Missouri's position does not depend on whether *Ulrich*'s "no set

6

of facts" standard remains good law.  What matters is that courts cannot reject a complaint's factual allegations at the motion-to-dismiss stage— as *Twombly* and *Iqbal* make clear.  *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679.

Starbucks next invokes to "the well-established rule that a court can consider documents referenced in the complaint when deciding a motion to dismiss."  Starbucks Br. 44.  Starbucks claims that Missouri distinguished these cases simply because they "involved fewer and shorter documents."  *Id.*  Starbucks is partly correct.  There is a difference between considering a single press release and considering nearly 1,500 pages of exhibits at the motion-to-dismiss stage.  The latter scenario effectively creates a trial record without the benefit of discovery, rules of evidence, or a hearing for adversarial testing.

That said, the length and amount of exhibits was not Missouri's primary objection.  *Contra* Starbucks Br. 44.  Rather, Missouri's point is that the District Court failed to credit the Complaint's allegation that Starbucks's so-called reforms were simply attempts to better hide its plainly discriminatory policies.  *See, e.g.*, App.11, 27, 37, 47, R.Doc.1 ¶¶ 15–17, 111, 172, 226.  The Complaint acknowledges Starbucks's broad

assurances of reform, but it nonetheless maintains that Starbucks continues to discriminate. *See id.* The District Court failed to credit *those* allegations, thus violating its obligation to view competing allegations in the light most favorable to Missouri. *Stoltz*, 327 F.3d at 674.

## II. Like the District Court, Starbucks provides little explanation for the dismissal of Missouri's damages claims.

Even if the Court permits Starbucks to contest Missouri's allegations at the pleading stage, that would only demonstrate that Starbucks has reformed some of its discriminatory policies *prospectively*.

Helpfully, Starbucks *admits* that it had discriminatory policies from 2020 until quite recently. Starbucks admits that "in October 2020," Starbucks set U.S.-wide "representation targets" to be achieved "by fiscal year 2025, including separate targets for corporate, retail, and manufacturing roles for women and minorities, referred to as Black, Indigenous and People of Color ('BIPOC')." Starbucks Br. 6. Starbucks also admits that "prior versions of Starbucks' Leadership Stock Plan"—that is, versions in effect "[f]rom 2021–23" and "in 2024"—"included a modifier linked to whether the company met a multi-year goal for an increase in representation of BIPOC" employees. *Id.* at 7, 10–11. Starbucks likewise admits that past Bonus Plans *did* consider

achievement of Starbucks's racial quotas. *See id.* at 9–10. Starbucks further admits that at least until 2023, Starbucks had "eligibility restrictions" on its mentorship program, which included limiting the mentorship program to "BIPOC mentees." *Id.* at 11.

Controlling precedent guarantees the availability of at least nominal damages to redress these discriminatory practices. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021). What's more, Section 1981a guarantees the availability of "compensatory and punitive damages" for successful Title VII claimants. 42 U.S.C. § 1981a(a)(1); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001). However, the District Court never explained its dismissal of Missouri's damages claims.

Starbucks tries to justify dismissal of Missouri's damages claims for the first time on appeal. *See* App.77, R.Doc.17; App.138, R.Doc.35; Starbucks Br. 47 n.19. But Starbucks relegates its response to a single footnote. Starbucks Br. 47 n.19. There, Starbucks claims that Missouri has advanced only facial challenges and that "a claim for retrospective damages" is "inconsistent with a facial challenge." *Id.*

This argument is a strawman fallacy. It rests on the flawed premise that Missouri advances only a facial challenge—equivalent to a facial challenge in the constitutional context. But Missouri has never framed this action in facial or as-applied terms. *See* App.8, R.Doc.1. Indeed, Starbucks twice acknowledges that Missouri "did not" limit its Complaint "below" to only "facial or as-applied challenges." Starbucks's Br. 15, 46. This admission alone is enough to resolve this point.

In any event, Starbucks is wrong that Missouri's brief on appeal somehow limits Missouri's Complaint to "only a facial challenge." Starbucks Br. 40 (citing Opening Br. 53). Starbucks cites one page of Missouri's brief for this proposition, *id.*, and that page simply observes that "Starbucks imposes several *facially* discriminatory policies across the United States—and the United States includes Missouri." Opening Br. 53 (citing App.26, 39–40, R.Doc.1 ¶¶ 104–06, 182). Missouri noted this point to explain why the Complaint states a claim alleging discrimination against Missourians. *See id.* The State used the term "facially" synonymously with "plainly" or "blatantly." *See id.* The point was not to limit Missouri's claims to only facial challenges—as in the constitutional context.

10

Starbucks fundamentally misunderstands the meaning of the term "facially discriminatory policy" in the Title VII context. The phrase refers to a policy that explicitly enshrines discrimination through its terms. *See, e.g.*, *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls*, 499 U.S. 187, 199 (1991) ("Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination."). Likewise, Title VII precedents use the term "facially neutral" policy to refer to a policy that treats groups equally according to its terms. *See, e.g.*, *Nashville Gas Co. v. Satty*, 434 U.S. 136, 144 (1977) ("When confronted by a facially neutral plan, … the burden is on the plaintiff to show that the plan discriminates on the basis of sex in violation of Title VII."). Starbucks never cites—and Missouri is not aware—of any Title VII case that casts the plaintiff's claims in facial versus as-applied terms.

Unsurprisingly, Starbucks's two citations on this point are irrelevant. Starbucks Br. 47 n.19 (citing *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612 (3d Cir. 2013); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011)). Both cases address facial *constitutional*

11

challenges to city *ordinances*. *See CMR D.N. Corp.*, 703 F.3d at 616–17; *Ezell*, 651 F.3d at 689. They have nothing to do with the remedies available under Title VII and § 1981.

This Court should reverse.

## III. Starbucks fails to justify a circuit split on standing.

Starbucks simply regurgitates the District Court's erroneous reasoning on Article III standing. Starbucks first argues that Missouri never alleges an injury to a quasi-sovereign interest. Starbucks Br. 25–26. It also erroneously characterizes Missouri as urging an "exception" to the requirement for a quasi-sovereign interest. *Id.* at 28–29. But these arguments conflict with Supreme Court precedent. *Snapp* held that "securing residents from the harmful effects of discrimination" *is* a quasi-sovereign interest—no less than "a State's interests in the health and well-being of its residents." 458 U.S. at 607–09. Indeed, that is why at least a dozen courts have held that eradicating "discrimination" as a "textbook quasi-sovereign interest[]" supporting *parens patriae* standing. *See Aziz v. Trump*, 231 F.Supp.3d 23, 32 (E.D. Va. 2017) (citing *Snapp*, 458 U.S. at 609); Opening Br. 5 n.1 (collecting cases). Far from seeking

an exception to traditional *parens patriae* rules, Starbucks Br. 28, Missouri simply seeks faithful application of *Snapp*.

Starbucks next argues that the Complaint never alleges an injury to a "substantial segment" of Missouri's population. Starbucks Br. 26–27. Starbucks insists that—even before discovery—Missouri must allege the number of non-BIPOC employees and applicants that Starbucks discriminates against. *See id.* But this argument also fails. The Complaint alleges that Starbucks has nearly 200 retail locations across Missouri, in which it Starbucks employs hundreds, if not thousands, of Missourians. App.14–15, R.Doc.1 ¶¶ 46–47. The Complaint also alleges that Starbucks subjects all U.S. employees and job applicants to policies that discriminate against white individuals and minority individuals who are not BIPOC. *See id.* ¶¶ 84–228. That raises a "reasonable inference" that Starbucks racially discriminates against a "substantial" number of Missourians working or applying to work at Starbucks. *See Fiecke-Stifter v. MidCountry Bank*, 170 F.4th 1120, 1124 (8th Cir. 2026) ("In analyzing a motion to dismiss, a court *must* … make *all* reasonable inferences in favor of the nonmoving party." (emphasis added) (quotation omitted)); *cf. New York ex rel. James v. Niagara-Wheatfield Cent. Sch.*

*Dist.*, 119 F.4th 270, 280–83 (2d Cir. 2024) (finding an injury to a substantial segment of New York's population in a Title IX case involving *one* school district and "dozens" of students); *Massachusetts v. Bull HN Info. Sys.*, 16 F.Supp.2d 90, 98–101 (D. Mass. 1998) (discrimination against about 50 employees); Opening Br. 34–35 (collecting cases).

Starbucks also ignores *Snapp*'s instruction that courts must account for discrimination's "indirect effects" when analyzing a State's asserted quasi-sovereign interest. 458 U.S. at 607. *Snapp* itself emphasized "the political, social, and moral damage of discrimination," which "carry a universal sting." *Id.* at 609. And following *Snapp*, many courts have held that "[d]iscrimination of any kind … corrodes the social fabric and fosters intolerance and inequality," making it "unambiguously in the interest of the state to stop it in its tracks." *Bull HN.*, 16 F.Supp.2d at 98. Starbucks does not—and cannot—contest these points.

Next, Starbucks repeats the District Court's erroneous claim that Missouri only has *parens patriae* to challenge discrimination against Missourians vis-à-vis their status *as Missourians.* Starbucks Br. 27. But like the District Court, Starbucks fails to cite a single case—in forty-four years since *Snapp*—that adopts their cramped reading of the decision.

14

The Court should reject Starbucks's invitation to create a circuit split and effectively gut *Snapp* within this Circuit.

Starbucks next tells the Court that "[t]he Attorney General's approach also would open the door to *parens patriae* standing to enforce virtually every federal law." Starbucks Br. 29. But this is nonsense. Statutory standing is different from Article III standing. *Miller v. Redwood Toxicology Lab'y*, 688 F.3d 928, 934 (8th Cir. 2012). As the opening brief notes, the real danger is the District Court's holding that States lack Article III standing. If upheld, this constitutional holding endangers many statutes that depend on States possessing *parens patriae* powers. *See* Margaret H. Lemos, *State Enforcement of Federal Law*, 86 N.Y.U. L. Rev. 698, 700, 708–11 (2011).[1]

---

[1] In a remarkable footnote, Starbucks tries to limit the blast radius of its argument by claiming that *parens patriae* standing is a matter of "prudential standing." Starbucks Br. 30 n.10. Starbucks never argued this below, and the District Court did not frame its holding in prudential terms. *See* App.1659–69, R.Doc.40 at 23–33. That said, if the Court agrees with Starbucks that the *parens patriae* requirements are simply prudential and can be overridden by Congress, Starbucks Br. 30 n.10, that would only inure to Missouri's benefit because Title VII explicitly authorizes "governments" to bring federal discrimination claims, *infra* 16–17

Failing all else, Starbucks resorts to claiming that Missouri has not alleged an injury-in-fact because Missouri's Complaint does not identify individuals who were denied employment, a promotion, or mentorship on account of race. Starbucks Br. 19–22. But critically, Starbucks never contests that Missouri can prove an injury merely by highlighting a "discriminatory classification" that prevents Missourians from "competing on an equal footing." *Adarand Constructors v. Pena*, 515 U.S. 200, 211 (1995) ("The aggrieved party need not allege that he would have obtained the benefit but for the barrier in order to establish standing." (quotation omitted)). Missouri has done just that in pleading that Starbucks maintains statewide discriminatory policies. *See, e.g.*, Opening Br. 12 (collecting cites).

The Court should reverse.

## IV. Starbucks fails to explain why Missouri lacks authority to enforce Title VII, § 1981, and the MHRA.

### A. Title VII

Title VII's text is clear. It authorizes suits by a "person claiming to be aggrieved," 42 U.S.C. § 2000e-5(f)(1), and Title VII defines "person" to include "governments" and "governmental agencies," *id.* § 2000e(a). This is broad enough to encompass suits by Missouri through its Attorney

General. *Accord E.E.O.C. v. FedEx*, 268 F.Supp.2d 192, 197 (E.D.N.Y. 2003) ("Congress intended to permit *parens patriae* actions when it authorized state governments to bring suit under Title VII."); *C.R. Dep't v. Grimmway Enters., Inc.*, 800 F.Supp.3d 1084, 1103 (E.D. Cal. 2025) ("Because states qualify as persons claiming to be aggrieved, they are authorized to bring suit under Title VII and therefore under the ADA."); Lemos, *State Enforcement of Federal Law*, *supra* at 711 (citing Title VII as an archetypal example of a federal statute authorizing State enforcement through its text).

Starbucks offers a few responses, but each fail. *First*, Starbucks quibbles with Missouri's district court citations. *See* Starbucks Br. 34. But both cases are useful because they analyze Title VII's text. *See FedEx*, 268 F.Supp.2d at 198; *Grimmway*, 800 F.Supp.3d at 1103.

*Second*, Starbucks ignores this Court's many cases holding that "Title VII … is to be accorded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination." *Parham v. Sw. Bell Tel. Co.*, 433 F.2d 421, 425 (8th Cir. 1970); *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir. 1977); *Clayton v. White Hall School District,* 875 F.2d 676,

17

679 (8th Cir. 1989); *accord Sedlacek v. Hach*, 752 F.2d 333, 337 (8th Cir. 1985). Even if the Court believes that Title VII is ambiguous (it is not), these cases require this Court to adopt an expansive reading of Title VII.

Starbucks ignores all these cases except for *Clayton*, which it deems distinguishable simply because it involved a white employee suing to challenge discrimination against a minority employee. Starbucks Br. 35. Comparatively, this case involves a State suing on behalf of hundreds, if not thousands, of citizens that have been discriminated against on account of their race. App.14–15, R.Doc.1 ¶¶ 46–47. But if anything, *Clayton* shows how easy it is to prove that Missouri is aggrieved. If a white employee can be "aggrieved" in light of discrimination against a minority employee, then Missouri is surely aggrieved by systematic racial discrimination perpetrated by a Fortune 500 company with nearly 200 retail locations in Missouri. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983) ("[T]he Government has a fundamental, overriding interest in eradicating racial discrimination"—even by private organizations.).

*Third*, Starbucks ignores Missouri's argument that the Supreme Court's recent *Thompson* decision supports Missouri, not Starbucks. *See*

18

Opening Br. 48; Starbucks Br. 33–34. All parties agree that *Thompson v. North American Stainless* held that a plaintiff must advance claims within Title VII's "zone of interest." 562 U.S. 170, 177–78 (2011). Yet, aside from the District Court, no court has ever held that *Thompson* limits State standing under Title VII. And as previously explained, Missouri easily satisfies the "not especially demanding" "zone of interest" test, *Lexmark Int'l v. Static Control Components*, 572 U.S. 118, 130 (2014) (cleaned up), especially when Title VII contemplates suits by "governments" and "governmental agencies," *id.* §§ 2000e(a), 2000e-5(f)(1).

*Finally*, Starbucks claims that Missouri's reading of Title VII is "absurd" in light of "Title VII's comprehensive framework." Starbucks Br. 35–37. Starbucks first notes that Title VII grants the Missouri Human Rights Commission exclusive authority, for a sixty-day period, to investigate individual charges of discrimination under state law. 42 U.S.C. § 2000e-5(c). Starbucks then continues that "[i]f Congress intended states to investigate and pursue charges under Title VII as well, it clearly could have authorized such actions." Starbucks Br. 35–36. But this glosses over 28 U.S.C. § 1367. Section 1367(a) generally permits

plaintiffs to combine federal claims and state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." This guarantee can be abrogated only through a "Federal statute" that "expressly provide[s] otherwise." Title VII does not expressly provide otherwise. Rather, it leaves the door open for combining federal and state-law claims.

Starbucks also notes that Title VII's provisions grant the EEOC and the U.S. Attorney General authority to enforce Title VII after the "person claiming to be aggrieved" has exhausted their claims with the EEOC. 42 U.S.C. § 2000e-5(b), (f)(1). Starbucks notes that both the EEOC and the U.S. Attorney General also fit within Title VII's definition of "person," and Starbucks claims that accepting Missouri's argument could render Title VII's procedure "superfluous" for the EEOC and the U.S. Attorney General. Starbucks Br. 36. But this is inaccurate. "It is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (cleaned up). So as to the EEOC and the U.S. Attorney General, Title VII's specific directive controls over Title VII's directive for other government entities.

Starbucks also notes that Title VII contemplates procedural exhaustion for the EEOC, DOJ, and individuals, but claims that Missouri's argument absurdly implies that States are exempted from the exhaustion requirements applicable to other "person[s] claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1); Starbucks Br. 36–37. But this misconstrues Missouri's position on exhaustion. Below, Missouri argued that the District Court should apply the "futility" exception—which is an "equitable exception." App.117–18, R.Doc.27 at 11–12 (citing *Ace Prop. & Cas. Ins. v. Fed. Crop Ins.*, 440 F.3d 992, 1000 (8th Cir. 2006)). Missouri noted that the exception applied because the "EEOC's administrative remedies are designed only for individual plaintiffs." *Id.* at 12. The EEOC has no administrative procedures for States challenging a company's discriminatory policies and practices statewide. *See id.* But if the EEOC *did* establish such an administrative procedure, Missouri would be subject to it just like any other "person claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1). Missouri's point is only that it cannot be deprived of a cause of action—conferred by Title VII's text—

21

simply because the EEOC has not established administrative procedure for processing claims from States.[2]

At bottom, Starbucks's invocation of "Title VII's comprehensive framework" cannot justify ignoring its plain text. The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Title VII authorizes suits by a "person claiming to be aggrieved," 42 U.S.C. § 2000e-5(f)(1), and Title VII defines "person" to include "governments," *id.* § 2000e(a). Missouri is a "government," so the Court should reverse.

## B.    Section 1981

As with Title VII, Starbucks tries to dodge all relevant authority on *parens patriae* enforcement of § 1981. It does so primarily through citation to *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). *See* Starbucks Br. 38–39. But *Domino's* does not address *parens patriae* suits under § 1981. There is only one case resolving that question:

---

[2] In a conclusory footnote, Starbucks argues that Missouri's "Title VII claims should be dismissed for this failure to exhaust." Starbucks Br. 37 n.14. But the District Court never ruled on exhaustion, and this Court need not address it in the first instance. *See MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1021 (8th Cir. 2020).

*Pennsylvania v. Glickman*, 370 F.Supp. 724, 727–28 (W.D. Pa. 1974). There, the court permitted Pennsylvania to challenge racial discrimination under § 1981. *See id.* The court explained that "the right to sue as parens patriae includes the right to recover for damages to the state's quasi-sovereign interests" and "[r]acially discriminatory employment practices would unquestionably" qualify for damages because they "impair the welfare of Pennsylvania's citizenry." *Id.* (citing *Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972)).

Starbucks claims that Missouri's argument "confuse[s] statutory authority with *parens patriae* standing" under Article III. Starbucks Br. 38. Starbucks also claims that Missouri cites no case holding that States possess authority to enforce federal law absent a specific cause of action. *Id.* at 38–39.

But Missouri (unlike Starbucks) has provided precedential support showing that "States have frequently been allowed to sue in parens patriae to enforce federal statutes that do not specifically provide standing for state attorney generals." *New York v. Griepp*, 991 F.3d 81, 130 (2d Cir.), *vacated on other grounds*, 11 F.4th 174 (2d Cir. 2021) (quoting *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d

23

110, 119 (2d Cir. 2002)); *see also Bull HN*, 16 F.Supp.2d at 103 ("[T]here is nothing unusual about a state seeking enforcement of federal laws that do not specifically provide for state enforcement." (collecting cases)). This includes in the Civil Rights Act-context, where courts have uniformly allowed States to enforce § 1983 and Title VI—not to mention § 1981. *See, e.g.*, *North Dakota v. Heydinger*, 2016 WL 5661926, \*4–6 (D. Minn. Sept. 29, 2016) (A State may "seek relief under § 1983 when it sues in its non-sovereign or quasi-sovereign capacity."), *aff'd sub nom.* 900 F.3d 565 (8th Cir. 2018); *Pennsylvania v. Porter*, 659 F.2d 306, 313–19 (3d Cir. 1981) (en banc) (§ 1983); *In re New York City Policing During Summer 2020 Demonstrations*, 548 F.Supp.3d 383, 399 (S.D.N.Y. 2021) (§ 1983); *New York ex rel. Schneiderman v. Utica City Sch. Dist.*, 177 F.Supp.3d 739, 749 (N.D.N.Y. 2016) (§ 1983 and Title VI). As with the other issues in this appeal, the Court should decline to become an outlier on the ability of States to enforce provisions of the Civil Rights Act.

### C. MHRA

Starbucks likewise fails to justify dismissal of Missouri's MHRA claims, which the Attorney General may advance *parens patriae* under Mo. Rev. Stat. § 213.126.1.

Starbucks's first argument is one that even the District Court did not accept. Starbucks notes that § 213.126.1 provides that the Attorney General may bring a civil action to any "appropriate *state* court." Starbucks Br. 39–40 (quoting Mo. Rev. Stat. § 213.126.1). Starbucks thinks that this somehow bars federal courts from considering the Attorney General's claims under the MHRA. Starbucks Br. 39–40. But that is not the best reading of the statute. The General Assembly cannot "cannot strip a federal court of jurisdiction that federal law otherwise provides." *Mignott v. State Bar of Ga. Found., Inc.*, 146 F.4th 1095, 1097 (11th Cir. 2025). Here, federal law grants ancillary jurisdiction over the Attorney General's MHRA claims. 28 U.S.C. § 1367. Thus, § 213.126.1's reference to "state court[s]" should not be understood to deprive any federal court of jurisdiction. *Id.* Rather, § 213.126.1's language simply reflects that the Missouri General Assembly lacks authority to create federal jurisdiction. *See Ex parte McNiel*, 80 U.S. 236, 243 (1871).

This is even clearer when the Court reads § 213.126.1 against the backdrop of Missouri's *parens patriae* statute, Mo. Rev. Stat. § 27.060. Section 27.060 provides:

> The attorney general *shall* institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity

25

requisite or necessary to protect the rights and interests of the state, and enforce any and all rights, interests or claims against any and all persons, firms or corporations *in whatever court or jurisdiction such action may be necessary …*

*Id.* (emphasis added). That language, of course, allows the Attorney General to file lawsuits in federal court.

Next, Starbucks regurgitates the District Court's claim that the Complaint never alleges that Starbucks discriminated in Missouri. Starbucks Br. 40. But this simply ignores the Complaint's allegations, which allege systemic racial discrimination within Missouri's borders. *See* Opening Br. 12 (collecting cites).

Starbucks also argues that § 213.126.1 only authorizes the Attorney General to bring "pattern-or-practice" claims. Starbucks Br. 40–42. However, the text of § 213.126.1 explicitly forecloses this limit. It provides the Attorney General a cause of action whenever a company "engage[s] in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this chapter *or* … any group of persons has been denied *any of the rights granted by this chapter*, and such denial raises an issue of general public importance." Mo. Rev. Stat. § 213.126.1 (emphasis added). Regardless, Missouri's Complaint *does* allege "discriminatory patterns and practices" and other forms of

26

discrimination.  *See* App.12–54, R.Doc.1 ¶¶ 28, 35, 45, 54–56, 63, 68, 262, 265–67.  So this argument leads nowhere.

**V.    Starbucks cannot justify the District Court's dismissal for failure to state a claim by ignoring controlling authority.**

Finally, Starbucks fails to justify the District Court's dismissal of Counts 1, 2, 3, 4, 5, 6, 7, and 10 of the Complaint.

**A.    Counts 1, 2, and 10**

As to Counts 1, 2, and 10, Starbucks tries to defend the District Court's holding that Missouri never alleged an "adverse action" giving rise to claims under Title VII, § 1981, and the MHRA.  Starbucks Br. 45–50.  However, Starbucks simply ignores this Court's opinion in *Cole v. Group Health Plan*, which held that "[a]fter *Muldrow*," a plaintiff "is only required to plead 'some harm respecting an identifiable term or condition of employment.'"  105 F.4th 1110, 1114 (8th Cir. 2024) (quoting *Muldrow v. St. Louis*, 601 U.S. 346, 355 (2024)); *see* Opening Br. 60 (discussing *Cole* even though Starbucks ignores it).  *Cole* also held that "[d]ismissal of [a Title VII] complaint on the basis of no adverse action is improper" at the pleading stage.  105 F.4th at 1114.  Starbucks ignores this too.

Starbucks also disregards this Court's cases on affirmative action under Title VII, including *Humphries v. Pulaski County Special School*

*District*, 580 F.3d 688 (8th Cir. 2009). *See* Opening Br. 2, 4, 62, 63 (discussing *Humphries*). *Humphries* holds that even quotas established to "maintain" a racial "balance" are unlawful. 580 F.3d at 695–96. Starbucks has no response.

Starbucks also ignores authority forbidding the *exact* policies alleged here, including "race-restricted access to mentoring," and "tying executive or employee compensation to the company achieving certain demographic targets." Hon. Andrea Lucas, *With Supreme Court affirmative action ruling, it's time for companies to take a hard look at their corporate diversity programs*, REUTERS (June 29, 2023);[3] *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 509 (5th Cir. 2023) (en banc) (Ho, J., concurring) (same); *see* Opening Br. 61–62 (discussing these sources). Indeed, EEOC and DOJ guidance prohibit the exact policies that Starbucks has imposed. *See, e.g.*, *What to Do If You Experience Discrimination Related to DEI at Work*, EEOC, https://perma.cc/FNJ8-FK7X (discussing Title VII's prohibition of quotas, racially exclusive mentorship opportunities, and separating employees based on race).

---

[3] https://www.reuters.com/legal/legalindustry/with-supreme-court-affirmative-action-ruling-its-time-companies-take-hard-look-2023-06-29/

This Court should reverse.

**B.    Counts 6 and 7**

Counts 6 and 7 allege that Starbucks's Partner Networks "limit, segregate, or classify" employees in a way that "deprive[s] or tend[s] to deprive [them] of employment opportunities."  42 U.S.C. § 2000e-2(a)(2); Mo. Rev. Stat. § 213.055.1(1)(b).  There is a "Black Partner Network," a "Pan-Asian Partner Network," and so on.  App.43–44, R.Doc.1 ¶¶ 203–09.  But "Starbucks has no Partner Networks … for any 'non-diverse' groups." *Id.* ¶ 220.

Both in the past and before this Court, Starbucks insists that "[p]artners of represented and underrepresented groups are not only allowed but encouraged to participate" in Partner Networks.  *Id.* ¶ 224; Starbucks Br. 12.  But Missouri alleged that Starbucks's past assurances on this point were mere "pretext to cover up [Starbucks's] unlawfully discriminatory intentions."  App.47, R.Doc.1 ¶ 226.

Starbucks responds by insisting this allegation is "conclusory."  Starbucks Br. 54.  However, the Complaint provided detailed allegations on this point, including that Starbucks only began making assurances of equal opportunity once shareholders proposed an audit of the Partner

Networks. App. 43–47, R.Doc.1 ¶¶ 200–28. Further, Starbucks's board *actively* opposed even an audit of the Partner Networks. *Id.* ¶¶ 223–25. This suggests that they may have something to hide—especially construing the Complaint in the light most favorable to Missouri. Discovery—not dismissal—should decide which party's story is correct.

Starbucks also disputes Missouri's allegation that representatives from each Partner Network have interfaced with the companies' leadership "on behalf of all employees possessing th[e] protected trait" assigned to the Partner Network. Starbucks Br. 55. But that is exactly what the Complaint alleges: The "Partner Networks serve as liaisons between [Starbucks's] leadership and the rank-and-file." App.45, R.Doc.1 ¶ 213. As a supporting examples, the Complaint alleges that starting in May 2020, "Starbucks CEO Kevin Johnson … hosted quarterly roundtables with leaders of the Partner Networks." *Id.* ¶ 211. Also, "[i]n 2021, as part of Starbucks I&D [Inclusion & Diversity] strategy, [Starbucks vowed] to continue to invest in its Partner Networks by: working closely with the Black Partner Network, Hora Del Café, India Partner Network, Indigenous Partner Network, and Pan-Asian Partner

Network to better understand and support the experiences of BIPOC partners." *Id.* ¶ 210.

Missouri plausibly alleges that Starbucks's Partner Networks "limit, segregate, or classify" employees in a way "tend[s] to deprive [them] of employment opportunities." 42 U.S.C. § 2000e-2(a)(2); Mo. Rev. Stat. § 213.055.1(1)(b). The Court should reverse.

## C.    Count 3

Starbucks's brief makes Missouri's position on Count 3 even simpler. Count 3 alleges that Starbucks's policies "aid, abet, incite, compel, or coerce the commission of acts prohibited under" the MHRA. Mo. Rev. Stat. § 213.070.1(1). The statute also prohibits even "attempt[s]" to aid or incite such acts. *Id.* The District Court held that Missouri failed to state a claim because Count 3 supposedly "would require [Starbucks] to have acted upon itself in aiding, abetting, compelling or coercing unlawful discrimination since [Starbucks] necessarily acts through its own employees." App.1679, R.Doc.40 at 43. To support its position, the District Court cited only *Matthews v. Harley-Davidson*, 685 S.W.3d 360 (Mo. banc 2024). But Starbucks now claims that *Matthews* never "raised or answered" whether an employer can "aid

or abet its own employees." Starbucks Br. 52. Missouri agrees.[4] Thus, all parties agree that the District Court cited no precedent supporting its odd reading of the MHRA's aiding-and-abetting provision.

The cases that Starbucks now belatedly cites are no better. Starbucks's leading case is *Radford v. Potosi R-III School District*, 2024 WL 1178000 (E.D. Mo. Mar. 19, 2024). But *Radford* was written by the same District Judge who authored the decision below in this case. Starbucks's next case, *Glore v. Potosi R-III School District*, 722 F. Supp. 3d 950 (E.D. Mo. 2024), was published two days after *Radford* and appears to copy and paste *Radford*'s reasoning, *compare id.* at 958, *with Radford*, 2024 WL 1178000, at *8. Thus, neither case is persuasive. Starbucks's final case, *8000 Maryland, LLC v. Huntleigh Financial Services*, 292 S.W.3d 439 (Mo. Ct. App. 2009), has nothing to do with the MHRA's aiding-and-abetting provision. Thus, Starbucks cites no authority justifying a categorical holding that Missouri's aiding-and-

---

[4] Missouri's opening brief noted that—to the extent *Matthews* has anything to say at all—the opinion supports Missouri, not Starbucks. The court held that "Harley failed to prohibit … *its own employees* from engaging in acts creating the alleged hostile work environment. In doing so, Harley affirmed the ongoing racial conflict conducted by others in the Plant and substantially encouraged or assisted in the creation of a hostile work environment." 685 S.W.3d at 370 (emphasis added).

abetting provision never applies to an employer's incitement of discriminatory activities by its own employees. The Court should reject Starbucks's attempt to gut the MHRA's aiding-and-abetting provision.

### D. Counts 4 and 5

Finally, Starbucks's argues that "[t]he district court properly dismissed the unlawful-training-program claims in Counts 4 and 5 because the court recognized the challenged mentorship program is now open to all employees." Starbucks Br. 53. But again, this adjustment was never alleged in the Complaint. And even if it were, Missouri has alleged damages claims. *See Uzuegbunam*, 592 U.S. at 292. The damages claims remain viable—especially when Starbucks's brief openly concedes that its mentorship program recently excluded white employees. *See* Starbucks Br. 11 ("Starbucks launched a mentorship program in 2021, which originally paired BIPOC mentees at the director level with mentors in 'senior leadership' …"). This policy unquestionably "discriminate[d]" "in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e-2(d); Mo. Rev. Stat. § 213.055.1(2).

## CONCLUSION

The Court should reverse and remand for further proceedings.

July 16, 2026

Respectfully submitted,

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/Louis J. Capozzi, III*
Louis J. Capozzi III, #77756MO
  *Solicitor General*
J. Patrick Sullivan, #42968MO
  *Deputy Solicitor General*
J. Michael Patton, #76490MO
  *Deputy Solicitor General*
Office of the Attorney General
Old Post Office Building
815 Olive St, Suite 200
St. Louis, MO 63101
Office: (314) 340-3413
Louis.Capozzi@ago.mo.gov

*Counsel for the State of Missouri*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(ii) in that it contains 6,497 words excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) in that this document has been prepared in a proportionally spaced typeface using Microsoft Word (size 14 Century Schoolbook font).

*/s/ Louis J. Capozzi, III*

Louis J. Capozzi, III
Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was electronically filed by using the CM/ECF system. Counsel for Appellee will receive a copy of the above document through the CM/ECF system on July 16, 2026.

*/s/ Louis J. Capozzi, III*

Louis J. Capozzi, III
Solicitor General